Xin Wang
14890 Montavlo Rd.
Saratoga, CA 95070
(408) 827-8597
saratoga10172023@gmail.com
*pro se* Plaintiff

Kevin Lu
2361 Brandini Dr.
Dublin, CA 94568
(408)598-1892
kevinxinlu@gmail.com
*pro se* Plaintiff

FILED
DEC 19 2024
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

XIN WANG and KEVIN LU

    Plaintiff,

vs.

FTI CONSULTING LLP

    Defendant.

Case No.: C 24 09224 NC

COMPLAINT

<u>DEMAND JURY TRIAL</u>

### INTRODUCTION

1. Plaintiffs Xin Wang ("Wang") and Kevin Lu ("Lu") (collectively, "Plaintiffs") bring this action against Defendant FTI Consulting LLP ("FTI" or "Defendant") for fraudulent misrepresentation and contractual breach arising from the engagement of FTI to serve as an

1
COMPLAINT

expert witness in an appraisal proceeding ("Appraisal Action") concerning the fair value of Plaintiffs' minority shareholdings in JA Solar Holdings Co., Ltd. ("JA Solar"), a China-based solar panel manufacturer.

2. Over the course of two years, FTI invoiced its clients, including Plaintiffs, a total of $5 million for reviewing discoverable documents provided by JA Solar, preparing two expert reports and remotely attending a 90-minute management team hosted by JA Solar.

3. Plaintiffs relied on FTI's professional expertise to provide valuation services and expert reports. Contrary to these expectations, FTI engaged in excessive, unnecessary billing hours, concealment of staffing turnover, and general mismanagement of the Engagement, causing Plaintiffs financial loss.

4. Plaintiffs seek damages for Defendant's breach of contract and fraudulent misrepresentation, including recovery of overpaid fees, additional costs incurred, and consequential damages arising from Defendant's misconduct.

## PARTIES

5. Plaintiff Xin Wang is an individual residing in the state of California, county of Santa Clara. Plaintiff Kevin Lu is an individual residing in the State of California, the county of Alameda.

6. Defendant FTI Consulting LLP is a limited liability partnership organized under the laws of England, with its principal place of business in London, England. FTI is a subsidiary of FTI Consulting, Inc, the global business consulting advisory firm headquartered in Washington D.C., with offices in California.

## JURISDICTION AND VENUE

7. This District Court has subjection matter jurisdiction Pursuant to 28 U.S.C. § 1332(a)(1), because there exists diversity of parties and the amount in controversy exceeds $75,000.

8. Defendant has purposefully availed itself of the benefits and protections of California law by engaging in substantial business activities within the State of California, including (1) executing and maintaining contracts with California residents; (2) providing professional consulting services to California-based clients; (3) Effectuating physical service of judicial documents in California residential addresses; (5) Generating substantial revenue from services provided to California residents.

9. The exercise of personal jurisdiction over Defendant is reasonable and does not offend traditional notions of fair play and substantial justice. The claims asserted in this Complaint arise out of or relate to Defendant's contacts with California, thereby satisfying the requirements for personal jurisdiction.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The acts and omissions giving rise to this Complaint occurred, in substantial part, in this district, and Plaintiffs reside in this district, making it a convenient and appropriate forum for this action.

## STATEMENT OF FACTS

11. As of January 1, 2020, a group of shareholders, including Plaintiffs, were litigants of the Appraisal Action against JA Solar before the Grand Court of Cayman Islands. The nature of the Appraisal Action was straightforward: JA Solar was Cayman Islands-incorporated company based in China. From 2007 to 2018, JA Solar was listed on NASDAQ. In July 2018,

JA Solar's management took the company private through a cash merger transaction. A group of shareholders, including Plaintiffs, disputed the transaction's value and demanded appraisal of their shares. As a result, a petition was filed at the Grand Court of Cayman Islands for judicial determination of the fair value of those shares subject to the appraisal demand.

12. To effectively argue the valuation dispute with JA Solar in the Appraisal Action, Plaintiffs interviewed several consulting firms and academic experts in the field of corporate finance to serve as the expert witness capable of producing supportive valuation reports–FTI was one of the firms that pitched for the engagement. These interviews were conducted between January to May 2020.

13. During the interview process, FTI represented to Plaintiffs that it was able to not only provide capable expert witness services, but also manage the engagement in the most cost-effective way, for the following reasons:

a) FTI was already serving as the expert witness in a separate appraisal action involving Trina Solar ("Trina Appraisal"), another comparable China-based solar panel manufacturer taken private by its management in 2017. Given the similar underlying circumstances, FTI's professionals possessed the relevant experience in valuing a China-based solar panel manufacturers such as JA Solar.

b) FTI anticipated that bulk of the billings will arise from labor-intensive task of reviewing discoverable documents in Chinese to extract the useful elements as basis for FTI's expert reports. FTI assured Plaintiffs that it had a team of professionals proficient in Chinese who could efficiently conduct the document review.

    c) FTI committed to assigning and maintain a stable team of "handful" employees to the Engagement. FTI further assured that it would provide timely notice of any departures of key team members or other significant staffing changes.

    d) Given the factors above, FTI projected that its professionals would likely incur significantly fewer hours in Engagement compared to the Trina Appraisal or other similar appraisal engagements.

14. Plaintiffs relied on the FTI's representations. On or about May 5, 2020, Plaintiffs signed the engagement agreement whereby Defendant agreed to provide expert valuation services to Plaintiffs, in connection with the Appraisal Action before the Grand Court of Cayman Islands (the "Engagement").

15. Pursuant to the Engagement Agreement, Defendant was retained to provide the following services:

    a) Prepare an expert report.
    b) Attend any management meeting in-person.
    c) Prepare a joint expert report.
    d) Prepare for and attend court; and
    e) Assist with any other segments of work that may arise.

16. Engagement Agreement required FTI's fees be "reasonably and properly incurred." FTI was obligated to "perform the Engagement using all reasonable skill and care."

17. In the second half of 2021, JA Solar's discoverable documents were produced to Plaintiff, and all such documents were exclusively in Chinese. FTI assigned a team of professionals to review those documents. During multiple meetings held between FTI and Plaintiffs in 2020 and 2021, FTI represented that its team would leverage its experience from

Trina Apprisal case, given the similarity of the two companies in the same industry; and FTI also assured that it had assigned small and efficient professionals tailored to requirement of the Engagement, and would provide notice if any key employees depart the Engagement, preventing redundant billing.

18. In September 2021, FTI delivered its first expert report ("FER") that primarily consists of a discounted cash flow ("DCF") valuation of JA Solar, in accordance with section 4(1) of the Engagement agreement.

19. In December 2021, Plaintiffs received the invoices and corresponding timesheets detailing the billing hours incurred by FTI employees for the SER. Upon reviewing those timesheets, Plaintiffs identified significant discrepancies contradicting prior representations made by FTI, including the following:

a) Most employees with relevant experience from the Trina Appraisal left the Engagement in 2021. A majority of the FTI Employees who incurred hours had no apparent knowledge in the solar industry.

b) Much of the document reviewing work were performed by FTI employees without proficiency in Chinese, contrary to prior assurances.

c) Approximately twenty-five FTI employees worked on the DCF model, with a significant portion of the work duplicated due to the frequent staff turnover.

d) FTI failed to notify Plaintiffs of the departure of any "key employees" or the hiring new and inexperienced professionals for this Engagement, despite its prior commitment to do so.

20. On February 24, 2022, Plaintiffs emailed FTI outlining concerns regarding their employees' billing practice and underlying action that were contradictory to their representations. Plaintiffs received no response from FTI.

21. In March 2022, FTI provided additional assurance, stating that the employees assigned to the Engagement were well-suited and FTI had managed the Engagement in a "cost-effective" manner.

22. In April 2022, FTI produced the second expert reports ("SER") that primarily consists of summary of the difference between the SER and the report produced by the expert witness retained by JA Solar.

23. In May 2022, Plaintiffs received the invoices and corresponding timesheets related to the production of the SER. Upon receiving reviewing those timesheets, Plaintiffs noticed that names of most billed employees were unfamiliar, indicating that they were likely newly hired employees to replace the "key employees" that departed the Engagement.

24. In July of 2022, Plaintiffs requested FTI to provide a complete summary of all employees who billed time on the Engagement. Specifically, Plaintiffs requested FTI:

   a) Identify the employees that also participated in the Trina Appraisal.

   b) Disclose the employees with Chinese language skill that that participated in document reviewing.

   c) Disclose the employees that left the Engagement (or whose employment with FTI was terminated), as well as newly assigned employees that replaced those departed ones.

25. In response, FTI provided an Excel spreadsheet listing the names of all employees incurred time in the Engagement but declined to provide the specific staffing details that Plaintiffs requested. The spreadsheet showed that a total of 46 employees worked on the productions of the two expert reports, resulting in a total billing charge of $4,896,619.

26. The records showed that most billing employees involved in the Trina Appraisal departed Engagement in 2021, with newly hired employees brought in as replacements, redoing the same valuation work that were already completed by the departed employees.

27. Similarly, the records also showed all employees had Chinese language proficiency had either left the Engagement or otherwise been terminated at early stage of the Engagement. These findings directly contradicted FTI's assurances and representations.

28. FTI's billing of nearly $5 million, with 46 employees, for the preparation of two expert reports concerning the valuation of a Solar Panel manufacturer was highly excessive. Because the Appraisal Action was not highly contested, no court hearing requiring the attendance of FTI was ever held. Similarly, JA Solar held only one management meeting, a 90-minute-long Zoom call, which FTI attended. No other meeting required FTI's attendance.

29. From October 2022 to March 2023, FTI and Plaintiffs exchanged multiple correspondences. FTI asserted that Plaintiffs failed to pay for the full amount of issued invoices. Plaintiffs contended that FT1 engaged in professional negligence and fraudulent misrepresentation, deliberately inflating the billing related to the Engagement.

30. During the same period, Plaintiffs conducted investigation into FTI's billing practice in other comparable engagements. Specifically, Plaintiffs focused on the several appraisal actions where FTI also served as an expert witness on behalf of shareholders:

| Comparable Engagements | Jurisdiction | Year | FTI provided: |
|---|---|---|---|
| Chinese E-Commerce Dangdang | Cayman Islands | 2018 | - Three Reports<br>- Court Appearance |
| E-House (China) Holdings | Cayman Islands | 2018 | - Two Reports<br>- Court Appearance |
| Jardine Strategic | Bermuda | 2022 | - Three Reports<br>- Court Appearance |

31. The findings from these comparable cases support the theory that FTI deliberately concealed staffing issues and mismanaged the Engagement, resulting in overbilling by at least a factor of 3X.

32. In December 2022, Plaintiffs requested that FTI provide explanations regarding the significant billing discrepancy between the Appraisal Action and these comparable cases in which FTI was also retained to provide expert witness services. Plaintiffs received no response.

33. In February 2023, Plaintiffs conducted searches and reviewed the LinkedIn profiles of each of the 46 billing employees of FTI. The findings were consistent, showing that more than half of these 46 billing employees left FTI or had their association with FTI terminated during the course of the Engagement.

34. FTI failed to adhere to professional standards and engaged in egregious misconduct during the Engagement, including:

   a) Overbilling Plaintiffs for unnecessary and excessive hours.

   b) Performing redundant or duplicative work without notice to Plaintiffs.

   c) Concealing the termination of employees who had worked on the Engagement.

    d) Assigning employees who lacked the appropriate skill sets to the Engagement.

    e) Misrepresenting its management and oversight of the Engagement.

35. Plaintiffs relied on FTI's representations concerning the management and execution of the Engagement. Plaintiffs later discovered that these representations were false and misleading, and that Defendant's conduct caused Plaintiffs to incur financial damage.

## FIRST CAUSE OF ACTION

### (Fraudulent Misrepresentation)

36. Plaintiffs incorporate by reference all prior paragraphs as though fully set forth herein.

37. Defendant made material representations to Plaintiffs regarding its ability to manage the Engagement, allocate appropriate resources, and adhere to professional standards.

38. Defendant knew or should have known these representations were false, as Defendant engaged in overbilling, mismanagement, and concealment of critical information.

39. Plaintiffs reasonably relied on Defendant's representations to their detriment.

38. As a direct and proximate result of Defendant's fraudulent misrepresentations, Plaintiffs have suffered damages in an amount to be proven at trial, including but not limited to overpaid fees, consequential damages, and interest.

39. Plaintiffs discovered the fraud in January of 2023.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

40. Plaintiffs incorporate by reference all prior paragraphs as though fully set forth herein.

41. Plaintiffs and Defendant entered into a valid and enforceable contract on or about May 5, 2020, wherein Defendant agreed to provide expert valuation services for Plaintiffs in connection with the Fair Value Action.

42. Defendant materially breached the terms of the contract which required all chargeable fees much be "

43. Plaintiffs performed all obligations required under the Agreement, or such performance was excused or rendered impossible due to Defendant's material breach.

44. Defendant materially breached the Agreement by, among other things: (a) Overbilling Plaintiffs for unnecessary and excessive hours; (b) Failing to allocate qualified employees to the Engagement; (c) Concealing the termination of employees involved in the Engagement.

45. Specifically, Defendant breached the contract by failing to ensure that all chargeable fees were *"reasonable and properly incurred."* Defendant also violated its contractual obligation to *"perform the Engagement using all reasonable skill and care."*

46. As a direct and proximate result of Defendant's breach, Plaintiffs have suffered damages in an amount to be proven at trial, including but not limited to overpaid fees, consequential damages, and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For compensatory damages in an amount to be proven at trial;

2. For restitution of all overpaid fees and charges;

3. For punitive damages arising from Defendant's fraudulent conduct;

4. For pre-judgment and post-judgment interest as allowed by law;

5. For reasonable attorneys' fees and costs of suit; and

6. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury.

Dated: December 20, 2024

XIN WANG

14890 Montavlo Rd.

Saratoga, CA 95070

(408) 827-8597

saratoga10172023@gmail.com

*pro se* Plaintiff

*[signature]*

KEVIN LU
2361 Brandini Dr.
Dublin, CA 94568
(408)598-1892

kevinxinlu@gmail.com
*pro se* Plaintiff